2013 ND 175

**Debbora ROLLA, Personal Representative of the Estate of George Tank, deceased, Plaintiff and Appellee**

v.

**Greggory G. TANK and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants.**

**Greggory G. Tank, Appellant.**

No. 20130035.

Supreme Court of North Dakota.

Oct. 2, 2013.

Bryan L. Van Grinsven, Minot, N.D., for plaintiff and appellee.

H. Malcolm Pippin (argued) and Heather M. Sporrer (on brief), Williston, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Greggory Tank appealed from a judgment quieting title to certain McKenzie County oil, gas and mineral interests in Debbora Rolla, the personal representative of the estate of George Tank. Because the district court did not err in ruling the challenged quitclaim deeds reserved mineral interests in George Tank and reserved in him a life estate in the surface only, we affirm.

I

[¶ 2] George Tank, the father of Rolla, Greggory Tank and four other surviving children, owned property in McKenzie County which he farmed, ranched and used for commercial purposes. Greggory Tank stayed on the farm and worked with his parents. After his wife died, George Tank executed two quitclaim deeds in December 2007 and March 2008 conveying his interest in part of his property to Greggory Tank. The only difference between the two deeds is the March 2008 deed corrected the description of the property conveyed. Both deeds, captioned "(Life Estate Reserved)," contained the following reservation clauses:

EXCEPTING and RESERVING to the Grantor, his successors and assigns, all oil, gas and other minerals now owned by Grantor, including coal, in and under the above-described land, or any part thereof, together with the right of ingress and egress and the use of so much of the surface of the land as is reasonably necessary for the purposes of exploring for, mining, drilling, excavating, operating, developing, storing, handling, transporting and marketing such minerals. Sand, gravel and clay shall be considered part of the surface.

FURTHER EXCEPTING and RESERVING to the Grantor, the full use, control, income and possession of the described property, including without limitation, the right to lease and receive the bonuses, rentals and royalties therefrom, without liability for depletion or waste, for and during Grantor's natural life.

[¶ 3] After George Tank died in June 2008, ConocoPhillips, who apparently operates a well on the premises, ceased making production payments on the mineral estate covered by the quitclaim deeds because its title attorneys determined Greggory Tank owned the minerals. Rolla, as personal representative of the estate, brought this quiet title action to determine who owned the mineral interests in the subject property. Both parties filed motions for summary judgment. Rolla argued the deeds

conveyed the surface interest in the property to Greggory Tank subject to a life estate in George Tank and reserved to George Tank the entire mineral interests rather than a life estate in the minerals. Greggory Tank argued the deeds reserved to George Tank a life estate in both the mineral interests and the surface interests. The district court determined the deeds were ambiguous, denied the motions, and ordered the parties to proceed to trial. Following a bench trial, in which several persons testified, the court quieted title to the property in Rolla, reasoning:

> The Court finds that the testimony presented shows that George's intent was consistent with Plaintiff's position, that being that George intended to reserve a life estate in the surface and wanted to reserve the mineral rights on lands with no current well to the children other than Defendant, and intended that Defendant would receive the surface and mineral rights on lands with a current well, and surface on lands with no well.

The court also resolved other issues between the parties which are not challenged on appeal.

## II

[¶ 4] Greggory Tank argues the district court erred in ruling George Tank reserved the mineral interests and only conveyed to him a remainderman interest in the surface of the subject property.

[¶ 5] In *Nichols v. Goughnour*, 2012 ND 178, ¶ 12, 820 N.W.2d 740, we said:

> The primary purpose in construing a deed is to ascertain and effectuate the grantor's intent. *Mueller v. Stangeland*, 340 N.W.2d 450, 452 (N.D.1983). "However, deeds that convey mineral interests are subject to general rules governing contract interpretation, and

we construe contracts to give effect to the parties' mutual intentions." *Gawryluk v. Poynter*, 2002 ND 205, ¶ 8, 654 N.W.2d 400 (citations omitted). "When the language of a deed is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is inadmissible to alter, vary, explain, or change the deed." *Id.* at ¶ 9. "If a contract is ambiguous, extrinsic evidence may be considered to clarify the parties' intentions." *Id.* "A contract is ambiguous when rational arguments can be made for different interpretations." *Id.* "Whether a contract is ambiguous is a question of law for the court to decide." *Id.* "On appeal, we independently review a contract to determine if it is ambiguous." *Id.*

Resolution of an ambiguity in a contract by extrinsic evidence is a finding of fact subject to review under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *In re Estate of Zimmerman*, 1998 ND 116, ¶ 13, 579 N.W.2d 591. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Brigham Oil and Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, ¶ 32, 801 N.W.2d 677.

## A

[¶ 6] Greggory Tank argues the district court's decision is erroneous because the quitclaim deeds "unambiguously reserved the mineral interests for George Tank's natural life and upon his death are owned by Greggory Tank as the remainderman."

[¶ 7] We agree the quitclaim deeds are unambiguous, but we conclude the deeds unambiguously reserved in George Tank only a life estate in the sur-

face of the subject property, not the "oil, gas and other minerals." Greggory Tank relies on the caption on the deeds, "(Life Estate Reserved)," to support his argument that George Tank reserved a life estate in the oil, gas and other minerals. However, we must construe deeds to attempt to give effect to every clause, sentence and provision. *Valley Honey Co., LLC v. Graves*, 2003 ND 125, ¶ 12, 666 N.W.2d 453; N.D.C.C. § 9–07–06. Moreover, a caption on a deed "is of no effect where the conveyance is clear." *Clark v. CSX Transp., Inc.*, 737 N.E.2d 752, 763 (Ind.Ct.App.2000), and cases cited therein. This is simply an application of the principle that " '[i]f a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision.' " *Kortum v. Johnson*, 2008 ND 154, ¶ 44, 755 N.W.2d 432 (quoting *Oakes Farming Ass'n. v. Martinson Bros.*, 318 N.W.2d 897, 908 (N.D.1982)).

[¶ 8] In the first reservation paragraph, George Tank reserved "to the Grantor, his successors and assigns, all oil, gas and other minerals now owned by Grantor, including coal, in and under the above-described land." The second reservation paragraph begins with the word "FURTHER." "Further" is a "comparative" term defined as "in addition" and "going or extending beyond what exists." *Webster's Third New International Dictionary* 924 (2002). Use of the word "FURTHER" to begin the second paragraph therefore alerts the reader that a distinction is being drawn. The second reservation paragraph does not mention "oil, gas and other minerals" or "successors and assigns," but reserves "to the Grantor, the full use, control, income and possession of the described property, . . . for and during Grantor's natural life." The second reservation paragraph can only refer to a life estate in the surface of the property be-

cause George Tank reserved to himself in the preceding paragraph the "oil, gas and other minerals." The reference to "royalties" in the second reservation paragraph creates no conflict because royalties are routinely paid for removal of sand and gravel, *see, e.g., Finstrom v. First State Bank*, 525 N.W.2d 675, 676 (N.D.1994); *Helm Bros., Inc. v. Trauger*, 389 N.W.2d 600, 601 (N.D.1986), and the first reservation paragraph specifically provided "[s]and, gravel and clay shall be considered part of the surface." The caption "(Life Estate Reserved)" does not conflict with our interpretation of the deeds because George Tank did reserve a life estate in the surface estate of the property conveyed. Greggory Tank's reliance on N.D.C.C. § 9–07–19 (uncertain contract language interpreted against party who caused uncertainty to exist) and N.D.C.C. § 47–09–13 (grant interpreted in grantee's favor but reservation in grant interpreted in grantor's favor) is misplaced. Both are rules of last resort that do not apply where, as here, other means for ascertaining intent resolve the question. *See Webster v. Regan*, 2000 ND 89, ¶ 11, 609 N.W.2d 733; *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574, 578 (N.D.1993).

[¶ 9] Greggory Tank's argument that the life estate George Tank created in the second reservation paragraph also applies to the distinct reservation of mineral interests created by the first reservation paragraph is not a reasonable interpretation. "We will not strain to find an ambiguity where none appears on the face of the instrument." *Royse v. Easter Seal Soc'y. for Crippled Children and Adults, Inc.*, 256 N.W.2d 542, 545 (N.D.1977).

[¶ 10] We conclude the quitclaim deeds unambiguously reserved the "oil, gas and other minerals" in George Tank and "his successors and assigns," and reserved in

George Tank a life estate in the surface estate of the subject property.

## B

[¶ 11]   In any event, if we were to agree with the district court that the quitclaim deeds are ambiguous, we conclude the court's findings about George Tank's intentions based on the extrinsic evidence presented at trial are not clearly erroneous.

[¶ 12]   The attorney who prepared the deeds for George Tank testified that George Tank was knowledgeable about his property interests and wanted Greggory Tank to receive his surface and mineral interests in land where an oil and gas well was located subject to a life estate, and wanted to reserve all mineral interests in his remaining property for his other children.   George Tank gave the attorney the necessary property descriptions.   The attorney testified:

A.   He was reserving a life estate in the minerals that would be transferred on lands where there was currently a producing well.   There were no minerals going to be transferred under lands where there was no well, and so it's not necessary to reserve a life estate.

[¶ 13]   The deed at issue in this case and a second deed, covering other property not involved here, were executed in December 2007 as part of a single transaction.   The second deed, which reserved a life estate in George Tank and conveyed the surface interests to Greggory Tank, was identical to the second reservation paragraph in the challenged deed.   The attorney testified George Tank signed a codicil to his will in February 2008 to effectuate this intention, and the codicil removed Greggory Tank from the children sharing the retained mineral interests. George Tank's income tax accountant testified she prepared a gift tax return for him which only valued the surface interests

because George Tank wanted to reserve the mineral interests for himself.

[¶ 14]   Greggory Tank points to no evidence to dispute this other than his own self-serving testimony that George Tank promised him all of the oil, gas and mineral interests.   We conclude the district court's findings that George Tank wanted to reserve some mineral interests for his other children and that he accomplished this through execution of the quitclaim deeds are not clearly erroneous.

## III

[¶ 15]   We do not address other arguments raised because they either are unnecessary to the decision or are without merit.   The judgment is affirmed.

[¶ 16]   WILLIAM A. NEUMANN, S.J., JAMES D. HOVEY, D.J., MARY MUEHLEN MARING, DALE V. SANDSTROM, JJ., concur.

[¶ 17]   The Honorable JAMES D. HOVEY, D.J., and the Honorable WILLIAM A. NEUMANN, S.J., sitting in place of CROTHERS, J., and KAPSNER, J., disqualified.